UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| HELEN DEGRAFFENREID, | * |
| | * |
| Plaintiff, | * |
| | * |
| v. | * |
| | *     15-cv-10185-ADB |
| CAROLYN COLVIN, | * |
| *Commissioner of Social Security*, | * |
| | * |
| Defendant. | * |
| | * |

**<u>Memorandum and Order</u>**

September 20, 2016

BURROUGHS, D.J.

      Plaintiff Helen Degraffenreid ("Ms. Degraffenreid" or "Claimant") brings this action pursuant to section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), challenging the final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her claim for Social Security Disability Insurance ("SSDI") and Supplemental Security Income ("SSI") benefits. Currently pending are Claimant's motion to reverse the Commissioner's decision denying her disability benefits [ECF No. 17], and the Commissioner's cross-motion for an order affirming the decision. [ECF No. 18]. For the reasons described herein, the Court finds that the ALJ's decision was supported by substantial evidence and therefore <u>DENIES</u> Claimant's motion to reverse and remand and <u>ALLOWS</u> the Commissioner's motion to affirm.

## I. Background

### a. Statutory and Regulatory Framework: Five-Step Process to Evaluate Disability Claims

"The Social Security Administration is the federal agency charged with administering both the Social Security disability benefits program, which provides disability insurance for covered workers, and the Supplemental Security Income program, which provides assistance for the indigent aged and disabled." Seavey v. Barnhart, 276 F.3d 1, 5 (1st Cir. 2001) (citing 42 U.S.C. §§ 423, 1381a).

The Social Security Act (the "Act") provides that an individual shall be considered to be "disabled" if he or she is:

> unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months.

42 U.S.C. § 1382c(a)(3)(A); see also 42 U.S.C. § 423(d)(1)(A). The inability must be severe, such that the claimant is unable to do his or her previous work or any other substantial gainful activity that exists in the national economy. See 42 U.S.C. § 1382c(a)(3)(B); 20 C.F.R. § 416.905.

When evaluating a disability claim under the Act, the Commissioner uses a five-step process, which the First Circuit has explained as follows:

> All five steps are not applied to every applicant, as the determination may be concluded at any step along the process. The steps are: 1) if the applicant is engaged in substantial gainful work activity, the application is denied; 2) if the applicant does not have, or has not had within the relevant time period, a severe impairment or combination of impairments, the application is denied; 3) if the impairment meets the conditions for one of the "listed" impairments in the Social Security regulations, then the application is granted; 4) if the applicant's "residual functional capacity" is such that he or she can still perform past relevant work, then the application is denied;

>    5) if the applicant, given his or her residual functional capacity,
>    education, work experience, and age, is unable to do any other work,
>    the application is granted.

Seavey, 276 F.3d at 5 (citing 20 C.F.R. § 416.920).

Where the record includes medical evidence of drug addiction or alcoholism ("DAA"), there is an additional step: the Commissioner must determine whether the DAA is a "contributing factor material to the determination of disability." 20 C.F.R. § 404.1535. This is because, "[a]n individual shall not be considered . . . disabled . . . if alcoholism or drug addiction would . . . be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. § 1382c (a)(3)(J)). "The key factor . . . in determining whether drug addiction or alcoholism is a contributing factor material to the determination of disability is whether [the Commissioner] would still find [the claimant] disabled if [the claimant] stopped using drugs or alcohol." 20 C.F.R. § 404.1535. Accordingly, where there is medical evidence of DAA, the ALJ repeats the five-step analysis to determine if the claimant would be disabled even if he or she stopped using drugs or alcohol.

### b.  Procedural Background

Ms. Degraffenreid filed her application for SSI benefits on June 21, 2013 and for SSDI benefits on June 29, 2013. [R. 291-302].[1] She alleged that she became disabled on February 8, 2012, due to a combination of impairments including depression, anxiety, bipolar disorder, attention deficit disorder, and post-traumatic stress disorder. [R. 292]. Her date last insured was June 30, 2013. [R. 313].

---

[1] References to pages in the Administrative Record, which were filed electronically at ECF No. 16, are cited as "[R. __ ]."

The Social Security Administration (the "SSA") denied Ms. Degraffenreid's applications for SSI and SSDI benefits on September 3, 2013, and again upon reconsideration on January 24, 2014. [R. 138-139, 178-179]. Thereafter, Ms. Degraffenreid requested an administrative hearing [R. 195-196], and a hearing took place before Administrative Law Judge ("ALJ") Paul W. Goodale on August 14, 2014. [R. 28-104]. Ms. Degraffenreid, who was represented by counsel, appeared and testified at the hearing, as did a vocational expert ("VE"). On September 23, 2014, the ALJ issued a decision finding that Ms. Degraffenreid was not disabled. [R. 10-22]. The SSA Appeals Council denied Ms. Degraffenreid's Request for Review on November 26, 2014 [R. 1-4]. On January 23, 2015, Ms. Degraffenreid filed a timely Complaint with this Court, seeking review of the Commissioner's decision pursuant to section 205(g) of the Act. [ECF No. 1].

### c. Factual Background

Ms. Degraffenreid was born on July 23, 1971 and was raised in Somerville and Woburn, Massachusetts. [R. 105; 1034]. She graduated from Woburn High School. [R. 653]. She has two daughters, who both live with their father. [R. 299]. Ms. Degraffenreid has had periods of homelessness and lost custody of her children as a result of her unstable living situation and alcohol use. [R. 653]. Ms. Degraffenreid currently lives with a friend and former co-worker at his home in Wakefield, Massachusetts. Id.

Ms. Degraffenreid last worked at FedEx, where she was employed from March 2010 until February 2012 as a package handler. [R. 323]. She typically worked between 3.5 and 6 hours per day, five days per week [R. 324], totaling about 25-30 hours per week. [R. 48]. She performed physical tasks at FedEx, including lifting and carrying packages from conveyor belts onto pallets. [R. 324]. Prior to FedEx she worked in retail at the Family Dollar from October 2007 until January 2011, where her tasks included helping customers, unloading delivery trucks,

stocking shelves, and working as a cashier. [R. 323, 325]. Prior to that, she served as a Deli Worker at one or more supermarkets, including Hannaford's, from approximately October 2001 to July 2007, where she primarily filled deli orders for customers, and was not required to do significant lifting or carrying activities. [R. 54-55, 323, 326]. Prior to this time, she did miscellaneous other jobs in restaurants and retail establishments. [R. 55-56].

### d. Medical Evidence

The medical evidence submitted by Ms. Degraffenreid largely begins in early 2012, when she began receiving treatment at the Central Street Health Center in Somerville, Massachusetts. Ms. Degraffenreid had an initial psychiatry evaluation at the Central Street Health Center in April 2012. [R. 651-654]. Ms. Degraffenreid was seeking therapy and medication to help with her depression and to maintain her sobriety. [R. 651]. Lauren Costello, RN, conducted the initial evaluation, and gave Ms. Degraffenreid an Axis I (primary) diagnosis of "Alcohol dependence in early remission, r/o Mood disorder NOS r/o/ substantive induced mood disorder." [R. 654]. Costello stated that, "It is unclear, given her substance use, if she has a primary mood disorder, or if she experiences depressed and elevated moods in the context of chronic alcohol use." Id.

As described in Costello's initial evaluation report, Ms. Degraffenreid has a long history of substance abuse and mood symptoms. Id. Ms. Degraffenreid reported to Costello that she was one-month sober as of April 2012, but that she had previously been drinking two pints of peppermint schnapps and a 12 pack of beer daily. [R. 652]. She stated that she had begun drinking at age 15, and had drunk heavily beginning at age 17. Id.

Following this initial evaluation and continuing through May 2013, Ms. Degraffenreid had somewhat regular psychiatric treatment at the Central Street Health Center, primarily with Dr. James Recht. See, e.g., [R. 615-649]. Dr. Recht consistently gave Ms. Degraffenreid an Axis

5

I (primary) diagnosis of Alcohol Dependence in early remission and an Axis I (other) diagnosis of Major Depression. Id. Despite Ms. Degraffenreid's attempts at sobriety and treatment, Dr. Recht's notes indicate that during this time, Ms. Degraffenreid struggled with both alcoholism and depression. For instance, Dr. Recht's May 30, 2012 treatment notes state that, "She returns for treatment at CHA today for the first time since April 25. On that date, she presented intoxicated to scheduled follow up appointment with Lauren Costello. She was sent to PES for evaluation of intoxication and suicidal ideation, and discharged home later that evening." [R. 648]. His June 28, 2012 treatment notes report that Ms. Degraffenreid was convicted of DUI. [R. 646]. His notes for September 13, 2012 state that, "She is having difficulty again. Relapsed 6 days ago into EtOH use and drank heavily for 3 days. . . . She continues to think about 'just picking up a drink again' and has not been taking her Antabuse since the binge." [R. 639]. His January 10, 2013 treatment notes state that Ms. Degraffenreid "relapsed into EtOH abuse approximately 6 weeks ago (Thanksgiving) and experienced a recurrent of suicidal ideation." [R. 636]. His April 30, 2013 treatment notes state that in the past year, Ms. Degraffenreid "had two very severe EtOH relapses, including one complicated by PE (4 months ago) in which she nearly died. Worse, she now reports that she 'slipped' and had two glasses of wine earlier this week." [R. 618]. Finally, his May 29, 2013 treatment notes state that Ms. Degraffenreid had recently been hospitalized for "suicidal ideation during another relapse into EtOH." [R. 615].

Ms. Degraffenreid was hospitalized for various reasons between 2012-2014 [R. 397-558; 559-614; 692-730; 1033-1036; 1106-1149], including: a November 2012 hospitalization for adnominal pain [R. 452]; two February 2013 hospitalizations for pneumonia [R. 429] and possible seizure-like activity [R. 440]; March and April 2013 hospitalizations for chest pain [R. 410; 426]; a May 2013, as well as two August 2013, hospitalizations for suicide attempts in the

6

context of alcohol intoxication [R. 402; 700; 706]; and a July 2013 hospitalization for chest pain and drug-seeking behavior. [R. 712-13].

In August 2013 Ms. Degraffenreid began to attend counseling at Arbour Counseling Services ("Arbour") [R. 746-754]. At her August assessment, she reported drinking a 12 pack of beer and 12-14 drinks of liquor for the previous three weeks, which resulted in increased depression. [R. 746]. She stated that she had a history of past suicide attempts, but none while sober. Id. She also stated she had previously experienced prolonged periods of depression, but only while drinking. Id.

In December 2013, Ms. Degraffenreid began seeing nurse Christine Bourgeois at Arbour [R. 755-758, 737], and after about a month of treatment, Bourgeois completed a questionnaire, co-signed by a doctor, in connection with Ms. Degraffenreid's application for state disability benefits. [R. 737-40]. Bourgeois listed Ms. Degraffenreid's diagnosis as "Mood Disorder NOS, Alcohol Dependence (sober since August 2013) and Depression NOS." [R. 737]. She stated that Ms. Degraffenreid had approximately 25-30 hospitalizations for detox and depression and 5-6 suicide attempts. Id. She indicated that Ms. Degraffenreid had been fired for four jobs for not showing up, alcohol use, and insubordination. [R. 738]. She also stated that Ms. Degraffenreid had experienced four alcohol-related seizures in the past, that her longest period of sobriety was one-and-a-half years, and that "maintaining sobriety and stabilizing mood" were Ms. Degraffenreid's primary goals. [R. 740].

## II. The ALJ's Decision

On September 23, 2014, the ALJ issued a 13-page decision finding that Ms. Degraffenreid was not disabled under sections 216(i), 223(d), or 1614(a)(3)(A) of the Act. [R. 10-22]. First, he concluded that Ms. Degraffenreid had not engaged in "substantial gainful

activity" since February 8, 2012, the date of her alleged onset date. [R. 12]. Second, he found that the she had the following "severe" impairments: bilateral hammer toe deformities; status-post right foot repair and revision surgeries; knee pain, left greater than right; status-post bilateral arthroscopies (2001); back pain status-post T6 compression fracture; obesity; depression; anxiety; posttraumatic stress disorder (PTSD); and substance abuse disorder (alcohol). [R. 13]. Next, at step three, the ALJ determined that none of these impairments or combination of impairments met, medically equaled, or functionally equaled one of the Listed Impairments in the SSA regulations. [R. 13]. Specifically, the ALJ found that the Claimant's mental impairments, including the substance use disorder, do not meet listings 12.04 (affective disorders), 12.06 (anxiety-related disorders), and/or 12.09 (substance addiction disorders). Id.

The ALJ then proceeded to determine Ms. Degraffenreid's residual functional capacity ("RFC"). He found that based on all of Ms. Degraffenreid's impairments, including her substance abuse disorder, she had the RFC to:

> perform light work as defined in 20 CFR 404.1567(a) and 416.967(a) except that the claimant: can occasionally climb ramps and stairs but can never climb ropes, ladders, or scaffolds; can occasionally stoop, crouch, kneel and crawl; requires the ability to alternate between sitting and standing every 20 to 30 minutes; can frequently reach overhead bilaterally; and must avoid exposure to workplace hazards such as dangerous machinery and unprotected heights. The claimant can perform low-stress work with only occasional decision-making and occasional changes in work setting, but is unable to perform production rate or pace work. In addition, she would require the ability to take two unscheduled 20-minute breaks per day in addition to those customarily allowed; and would incur two or more unscheduled work absences per month.

[R. 15]. In making this determination, the ALJ stated that "[t]he record demonstrates that the claimant's predominate mental health issue is substance abuse." Id. This was based on the fact that "[t]he claimant's psychiatric treatment notes with Dr. James Recht consistently list alcohol dependence or alcohol dependence in early remission as the claimant's primary Axis I

diagnosis;" "[t]he claimant has an extensive history of hospitalizations for both physical and mental issues in the context of alcohol abuse;" and "she has had numerous hospitalizations for suicidal ideation and attempts, in the context of alcohol intoxication." Id. Accordingly, he attributed the last sentence of the RFC, under which Ms. Degraffenreid would have to take two unscheduled 20-minute breaks per day in addition to those customarily allowed and would incur two or more unscheduled work absences per month, to her alcohol abuse. He found that, "the claimant's alcohol-related hospitalizations would likely result in two or more unscheduled work absences per month and she would likely require unscheduled work breaks for alcohol-related issues such as acute intoxication, withdrawal, and alcohol-related exacerbations of her underlying mental impairments." Id.

From there, the ALJ determined that Ms. Degraffenreid did not have any past relevant work. [R. 15-16]. Though she had worked in the past, it was unclear if any of it constituted substantial gainful activity, and therefore, she did not have any past relevant work within the meaning of the SSA regulations. He then proceeded to step five, and determined that, considering Ms. Degraffenreid's age, education, work experience, and RFC, there were not any jobs that existed in significant numbers in the national economy that Ms. Degraffenreid could perform. In making this determination, the ALJ relied on the VE's testimony from the hearing, at which the VE testified that someone with Ms. Degraffenreid's RFC and other characteristics could not perform any jobs that existed in significant numbers in the national economy.

Typically, the ALJ's analysis would have stopped there, and Ms. Degraffenreid would have been found to be disabled. Because Ms. Degraffenreid had medical evidence of alcohol abuse, however, the ALJ went on to determine whether Ms. Degraffenreid would still be found disabled if she stopped using alcohol. See 20 C.F.R. § 404.1535 (where there is medical evidence

of alcoholism, Commissioner "must determine whether . . . alcoholism is a contributing factor material to the determination of disability"). The ALJ repeated the same five step process as before, but included the assumption that Ms. Degraffenreid had stopped using alcohol.

First, he found that with sobriety, Ms. Degraffenreid's mental impairments would be severe, and that none of them would meet or medically equal a Listed Impairment. Next, he determined that if Ms. Degraffenreid stopped the substance abuse, her RFC would be largely unchanged, but that she would no longer need to take two unscheduled 20-minute breaks and would not incur two or more unscheduled work absences per month. [R. 17]. Lastly, using this modified, alcohol-free RFC, the ALJ determined that considering Ms. Degraffenreid's age, education, and work experience, there would be a significant number of jobs in the national economy that she could perform. [R. 21]. At the hearing, the VE had testified that given the modified RFC, there were several jobs that Ms. Degraffenreid could perform, including:

- information clerk (DOT# 237.367-022), which is semiskilled (SVP 3) work with l,900 jobs in Massachusetts and 90,000 jobs in the national economy;

- call-out operator (DOT# 237.367-014), which is unskilled work with 268 jobs in Massachusetts and 19,900 jobs in the national economy; and

- surveillance system monitor (DOT# 379.367-010), which is unskilled work with 191 jobs in Massachusetts and 8,500 jobs in the national economy.

[R. 21]. Accordingly, the ALJ concluded that, "if the claimant stopped the substance use, she would be capable of making a successful adjustment to work that exists in significant numbers in the national economy," and that a finding of "not disabled" was appropriate. [R. 21]. Ms. Degraffenreid's alcohol abuse was a contributing factor material to her disability, and therefore she was precluded from receiving disability benefits. Id.

### III.    Standard of Review

This Court has jurisdiction pursuant to section 205(g) of the Act, 42 U.S.C. § 405(g). Section 205(g) provides that an individual may obtain judicial review of a final decision of the Commissioner of Social Security by instituting a civil action in federal district court. See 42 U.S.C. § 405(g). The district court may take a number of actions with respect to the Commissioner's decision. First, under sentence four of section 205(g), the court has the power "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing." Id. A court's decision under sentence four, however, can be based only on a review of the administrative record of proceedings before the Commissioner. See Whitzell v. Astrue, 792 F. Supp. 2d 143, 147 (D. Mass. 2011) (quoting 42 U.S.C. § 405(g)). If a claimant presents new evidence to the court that was not contained within the administrative record, the court may not consider it. "If additional evidence is to be considered, it must be by way of remand[]" pursuant to sentence six of Section 205(g). Hamilton v. Secretary of Health & Human Servs., 961 F.2d 1495, 1503 (10th Cir. 1992). Sentence six permits the court to remand a case to the Commissioner for further proceedings and order the evidence to be added to the record for consideration. See 42 U.S.C. § 405(g) ("The court may…at any time order additional evidence to be taken before the Commissioner…but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . . .").

Under section 205(g), sentence four, this Court's review of the Commissioner's decision is "limited to determining whether the ALJ used the proper legal standards and found facts upon the proper quantum of evidence." Ward v. Commissioner of Soc. Sec., 211 F.3d 652, 655 (1st

Cir. 2000). In conducting such review, the Court must defer to the Commissioner's factual findings, so long as such findings are "supported by substantial evidence," but the court's review of the Commissioner's conclusions of law is de novo. Id.; see also Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) ("The ALJ's findings of fact are conclusive when supported by substantial evidence . . . but are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts."). Substantial evidence means "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229, (1938)).

## IV.     Discussion

Ms. Degraffenreid advances a series of reasons why the ALJ's determination should be reversed. As explained below, the Court finds that all are without merit, and therefore affirms the ALJ's decision.

Ms. Degraffenreid first challenges the ALJ's finding that her substance abuse was material. She claims that the materiality finding was made in error, because it was not supported by a medical opinion. [ECF No. 17 at 4-5]. This argument has been consistently rejected in the First Circuit and elsewhere. As Magistrate Judge Kelley recently found, the claim that a medical expert, not the ALJ, must make the DAA materiality determination is "contradicted by clear Social Security policy and caselaw." Hamlin v. Colvin, No. CV 15-11797-MPK, 2016 WL 4148219, at *17 (D. Mass. Aug. 3, 2016). Though substantial evidence is required to support the ALJ's materiality finding, there does not need to be a medical opinion on point. Benelli v. Comm'r of Soc. Sec., No. CIV.A. 14-10785-MBB, 2015 WL 3441992, at *23 (D. Mass. May 28, 2015) ("[R]equiring a predictive opinion to determine materiality or a medical opinion that

12

separates the alcohol use from the remaining limitations deprives the ALJ of the flexibility needed to address DAA materiality."); see also Cage v. Comm'r of Soc. Sec., 692 F.3d 118, 126 (2d Cir. 2012) (requiring a medical opinion on DAA materiality would "unnecessarily hamper ALJs and impede the efficient disposition of applications in circumstances that demonstrate DAA materiality in the absence of predictive opinions"); McGill v. Comm'r of Soc. Sec., 288 F. App'x 50, 53 (3d Cir. 2008) (declining to impose requirement that DAA materiality must be based on expert psychiatric opinion evidence). Ms. Degraffenreid claims that Social Security Ruling ("SSR") 13-2p "requires that evidence of materiality [of a claimant's substance abuse] come from an acceptable medical source." [ECF No. 17 at 5]. SSR 13-2p, however, expressly disclaims this requirement, stating that "[t]he finding about materiality is an opinion on an issue *reserved to the Commissioner*" and "[t]herefore, we will *not* ask a treating source, a CE provider, a medical expert, or any other source for an opinion about whether DAA is material." 2013 WL 621536 at *8, n.19 (emphasis added).

Ms. Degraffenreid had the burden of showing the DAA was not material, and she did not meet this burden. Benelli, 2015 WL 3441992, at *22 ("The claimant bears the burden of proving his or her alcohol abuse is not a material factor contributing to the determination of disability."). There was ample support that Ms. Degraffenreid's substance abuse was material. Her medical treatment notes consistently referenced her ongoing struggle with alcohol abuse and the effect it was having on her life; she admitted that her mental health fluctuated with her sobriety; and many of her hospitalizations were related to her substance abuse.[2]

---

[2] Ms. Degraffenreid also claims that the ALJ ignored the opinions of Drs. Spangler and Carpenter, who both determined that a DAA materiality determination was "not required." [ECF No. 22 at 3]. According to Ms. Degraffenreid, these opinions "directly contradict the ALJ's materiality finding." Id. Ms. Degraffenreid misconstrues these opinions. Both doctors determined that Ms. Degraffenreid was not disabled *even including* the limitations caused by her substance

13

Ms. Degraffenreid next claims that the ALJ erred by basing his RFC determination on the "record as a whole." According to Ms. Degraffenreid, the ALJ's statement that he "based [his] finding on the record as a whole," was an "outright admission that he substituted his lay judgment for those of medical experts." [ECF No. 17 at 5]. Basing his RFC on the record as a whole, however, was precisely what the ALJ was supposed to do. See, e.g., Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (noting that substantial evidence exists, and the ALJ's findings must be upheld, "if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support [the ALJ's] conclusion") (quoting Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)); McDonald v. Astrue, No. CIV.A. 10-10896-DPW, 2011 WL 3562933, at *7 (D. Mass. Aug. 15, 2011) (noting that "the ALJ must consider the record as a whole" in going through the five-step sequential analysis). In determining the RFC—both including and excluding Ms. Degraffenreid's substance abuse—the ALJ appropriately evaluated the entire record, including Ms. Degraffenreid's hearing testimony, her hospitalization records, her medical treatment notes, and medical opinions. Neither SSA rulings nor regulations require that the ALJ identify a medical opinion wholly supporting his assessment, as Ms. Degraffenreid seems to argue.

Ms. Degraffenreid also claims that remand is necessary because two state agency psychologists opined that she could not concentrate for more than two hours in an eight-hour workday, which would preclude all work. [ECF No. 17 at 6-7]. Specifically, both Dr. Spangler and Dr. Carpenter, two non-treating medical reviewers, stated that Ms. Degraffenreid would be

---

abuse, and therefore, they did not to determine whether substance abuse was material to her disability. [R. 115; 151]; see 20 C.F.R. § 404.1535 (where the record includes medical evidence of drug addiction or alcoholism, the Commissioner must determine whether the DAA is a "contributing factor material *to the determination of disability*.") (emphasis added).

14

able to focus and persist at simple tasks for two hours in an eight-hour day. [R. 124, 174]. Ms. Degraffenreid asserts that these two opinions require a disability finding, since someone who could pay attention and concentrate less than six hours per day is unemployable. [ECF No. 17 at 7]. Ms. Degraffenreid's misconstrues these two opinions. A limitation to maintaining concentration for two-hour periods in the course of an eight-hour workday "is simply a term of art, or shorthand reference, to a basic presupposition inherent in the concentration, persistence, and pace analysis." Baker v. Social Sec. Admin. Comm'r, No. 10-cv-167-JAW, 2011 WL 1298694, at *4 (D. Me. Mar. 31, 2011). The SSA's Program Operations Manual System ("POMS") instructs administrative adjudicators to "[c]onsider an 8-hour workday and a 5-day work week (with normal breaks, e.g., lunch, morning and afternoon breaks) in evaluating the ability to sustain work-related functions." POMS DI 24510.005(C)(2)(b). As such, state agency doctors generally "express their RFC opinions about a claimant's ability to sustain concentration and persistence in terms of being able to do so in 'two-hour blocks.'" Baker, 2011 WL 1298694, at *4. Accordingly, Drs. Spangler and Carpenter's opinions can be most reasonably interpreted to mean not that Ms. Degraffenreid could only work for two hours in a single day, but rather, that she could concentrate for two-hour segments within a typical day. This is reinforced by the fact that Drs. Spangler and Carpenter both found Ms. Degraffenreid to not be disabled. [R. 149; 151].

Ms. Degraffenreid further argues that the ALJ improperly evaluated the opinions of Drs. Quinn and Murphy. [ECF No. 17 at 7, 9]. Dr. Quinn, a non-treating reviewer for the state's MassHealth disability program, completed a mental RFC worksheet for Ms. Degraffenreid in May 2014. He found that Ms. Degraffenreid had marked limitations in her ability to work at a consistent pace, but otherwise had only slight to moderate limitations in her ability to maintain concentration, interact socially, and adapt. [R. 1156]. The ALJ gave Dr. Quinn's opinion

"substantial weight insofar as it applies to the claimant's function in the context of substance abuse," but "little weight as it applies to her functioning while sober." [R. 14]. Ms. Degraffenreid argues that, "While the ALJ addressed this opinion in his decision, he erroneously and impermissibly determined that it applied only to [plaintiff's] functioning in the context of alcohol abuse . . ." [ECF No. 17 at 7]. The ALJ, however, was justified in differentiating between Ms. Degraffenreid limitations with or without substance abuse. Dr. Quinn's narrative, which he submitted along with the mental RFC worksheet, expressly states that "[d]ue to applicant's *substance abuse* . . . she will have a marked [limitation] in pace." [R. 1157 (emphasis added)]. This is consistent with the record as a whole, which shows that Ms. Degraffenreid substance abuse caused significant limitations above and beyond the limitations caused by her other impairments. Further, while Dr. Quinn opined that Ms. Degraffenreid would have marked limitations in her ability to work at a consistent pace, he also found that she would not have marked limitations in any other activity. [R. 1156].

The ALJ also properly evaluated Dr. Murphy's opinion. In June 2014, Dr. Murphy, Ms. Degraffenreid's treating physician, opined, among other things, that Ms. Degraffenreid would likely need to take three unscheduled breaks during a typical work day. [R. 1192]. This limitation was in the ALJ's first RFC, which included the effects of Ms. Degraffenreid's substance abuse, but not in the second RFC, which deducted the effects of Ms. Degraffenreid's substance abuse. Ms. Degraffenreid argues that the need for breaks should have been included in both RFCs, since Dr. Murphy "did not ascribe the need to take breaks to any substance abuse related problem." [ECF No. 17 at 9]. The ALJ, however, reasonably attributed Ms. Degraffenreid's need for unscheduled breaks to her substance abuse condition. [R. 15 (stating that Ms. Degraffenreid "would likely require unscheduled work breaks for alcohol-related issues such as acute

16

intoxication, withdrawal, and alcohol-related exacerbations of her underlying mental impairments")). In addition, contrary to Ms. Degraffenreid's claim, the ALJ did not ignore Dr. Murphy's opinion; he expressly addressed it in his decision and gave several reasons for declining to adopt it. [R. 20]. For instance, the ALJ noted that the opinion was insufficient to establish disability because Dr. Murphy expressly indicated that the limitations she identified were not expected to last at least twelve continues months. [R. 20]. Further, the ALJ noted that Dr. Murphy's opinion was unsupported and based on Degraffenreid's subjective allegations. [R. 20]; see Hutchinson v. Astrue, No. CIV.A. 10-30214-RWZ, 2012 WL 1642201, at *12 (D. Mass. May 9, 2012) ("[W]hen evaluating medical reports based in large part on subjective accounts or descriptions, the ALJ may consider the nature, frequency and credibility of the underlying source material.").

Next, relying on the First Circuit's holding in Lancellota v. Sec'y of Health & Human Servs., 806 Fed.2d 284 (1st Cir. 1986), Ms. Degraffenreid asserts that remand is required because the ALJ "made no findings regarding [her] stress limitations." [ECF No. 17 at 8-9]. In Lancellota, the First Circuit found that the ALJ's determination was not supported by substantial evidence, where, despite finding that the claimant suffered from a severe mental impairment, and could not perform his past jobs, "the ALJ did not explain what differences exist between [his] prior work and the available 'low-stress' jobs that would enable him to perform the latter when he cannot perform the former." Id. at 285. In Lancellota, remand was required, since "the ALJ made no findings on the nature of Lancellotta's stress, the circumstances that trigger it, or how those factors affect his ability to work." Id. at 286. Lancellota does not require remand in this case. As an initial matter, unlike in Lancellota, here, the ALJ did not make a finding that Ms. Degraffenreid was incapable of performing past relevant work, since Ms. Degraffenreid did not

have any past employment that qualified as past relevant work. Second, the ALJ did make findings on the nature of Ms. Degraffenreid's stress and how those factors might affect her ability to work, explaining that Ms. Degraffenreid was limited to "low-stress work *with only occasional decision-making and occasional changes in [the] work setting, but is unable to perform production rate or pace work*." [R. 17 (emphasis added)]. This is all that Lancellota requires. See Justason v. Barnhart, No. 05-55-P-C, 2005 WL 3263934, at *5 (D. Me. Nov. 30, 2005) ("This case is materially distinguishable from Lancellotta in that the [ALJ] did not simply find (and posit to the [VE]) that the plaintiff required a 'low-stress' job. Rather, he defined the parameters of 'low stress,' explaining that it meant limitation to occasional decision-making, occasional changes in the work setting and occasional exercises of judgment.").

      Lastly, Ms. Degraffenreid argues that the ALJ did not adequately consider her multiple hospitalizations between 2012 and 2014; she contends that these hospitalizations in and of themselves would preclude her ability to work because they would have required her to be absent from work more than two days per month. [ECF No. 17 at 9-10]. The ALJ clearly did consider these hospitalizations, in that he found that "alcohol-related hospitalizations would likely result in two or [more] unscheduled work absences per month." [R. 15]. This determination was supported by substantial evidence. Ms. Degraffenreid was hospitalized for a variety of reasons during this time, but other than substance abuse, there was no identifiable, chronic condition that would be expected to require recurrent hospitalizations in the future. See [R. 402-409, 692-711, 1106-1122 (admissions due to suicide attempts in the context of substance abuse); R. 713 (noting that plaintiff's reported chest pain, which resulted in multiple hospital admissions, suggested drug-seeking behavior); R. 740 (noting that plaintiff's reported seizures, which also led to

hospital admissions, were alcohol-related)]. As such, the ALJ reasonably found that Ms. Degraffenreid would only require significant work absences in the context of substance abuse.

## V.     Conclusion

For the reasons stated herein, the Court finds that the ALJ's decision was supported by substantial evidence and therefore <u>DENIES</u> Claimant's motion to reverse and remand and <u>ALLOWS</u> the Commissioner's motion to affirm.

**So Ordered.**

Dated: September 20, 2016

<u>/s/ Allison D. Burroughs</u>
ALLISON D. BURROUGHS
U.S. DISTRICT COURT JUDGE